The court does not see the force of the argument drawn from the supposed tautology which it is said the construe *244 tion contended for by the attorney general will produce. The expressions, acquitted or discharged from further prosecution, were introduced into the third section very properly out of caution, and are calculated to meet an argument pressed upon the court in this very cause, to wit, that if an examining court should say that a prisoner is not guilty, and actually turn him loose, yet if it does not go on and say on the record, he is discharged from further prosecution, he may be prosecuted de novo.
The argument from analogy is also deemed inapplicable. The grand and petty jury are sworn in a court having general jurisdiction of the crime, and are by the statute and common law charged with every part of it—not so the examining court: we have seen that its jurisdiction is limited.
Besides, it is not correct to say that a grand jury can acquit. It is true if they find ignoramus as to the murder and a true bill as to manslaughter, the attorney cannot try the prisóner for murder on that bill. But if he obtains better testimony, he may send up another bill for murder and try him upon that.-—One indictment cannot be pleaded in abatement of another, 2 Hale 239—nor can the return of ignoramus be pleaded in bar.—It is said that he will not be prepared to encounter the charge of malice, and therefore will be taken by surprise. The an *245 swer is, that this can never happen if the court send him tip generally for the homicide, as it ought to do.
“ But the examining court is an additional barrier erected for the benefit of the accused*” and so it is. No innocent man can now be kept in jail more than ten days without a trial. And if his examining court discharges him, he can never afterwards be questioned for the same crime, two great privileges which he did not enjoy by the common law. The inference drawn from the power to bail stands on the same footing with that drawn from the power to discriminate between grand and petty larceny. It may not be improper however to add here, that this power to bail was not given to the examining courts at the time nor for the reason mentioned in the argument: those courts have possessed that power ever since the year 1777. Vide Chancellor’s revisal, chap. 17, sect. 58, p. 74. The history we have had of this law, does not, it is believed, impugn in the least the construction given to it by the court. From the passage of the first act upon the subject up to the year 1786, we know of no judicial decision upon this point. For although Judge Mercer did in the discussion of Sorrell’s case, mention the case of the Kitig against Davis, yet he did not make even a parol report of the circumstances of the case. He did not tell the term, nor even the year when it was adjudged, nor, which is very remarkable, did any of his brother *246 judges, not even the judge who agreed with him, rely upon it, or mention it in their arguments: such a vague account ftoru mere memory, at a distant day, cannot be considered as authority, especially as it was not so considered by the court to whom it was mentioned.
Sorrell’s case, then, was, so far as the court can know, the first that has occurred upon this point, and that case settled the law as now contended for by the attorney general. This was the opinion of the general court, and and not one of its branches, and it is a mistake to say that Judge Tazewell gave no opinion. He did give a pointed and able one. It is true, he added, if the questiott was moved again, he would be willing' to hear it argued.
Neither was this a sudden opinion, given without consideration. The question was moved upon the fourth day of the court when the indictment was sent up to the grand jury. It was again discussed and decided on the sixth day of the court when the prisoner had his trial.
This construction has, as we are told, been sustained by the District Courts in Bailey’s and Shannon’s eases. So that there have been three: judicial opinions in favour of it, and none that we know of against it.
From the year If86 to the year 1804, eighteen years, *247 the legislature left this law, thus explained and thus executed, untouched. If it had deemed this construction incompatible with the public good, would it have done so? Certainly it would not.
In the year 1804, the legislature did pass a new statute on the subject of examining courts. But was it moved to do so, in order to give them this discriminating power; If that was its intention, why did it not do so in express words? Why was it left to intendment and doubtful con* ⅞ traction? The legislature knew that this power had been denied to the examining courts for eighteen years, why then did it not put the question beyond doubt? For the best of all possible reasons; it did not intend to disturb it.
The truth is, that all the judges in Sorrell*s case, and most of the judges and lawyers in the state, had always admitted that these courts did possess the power of entire acquittal. This opinion had, however, been lately-called in question by a book of respectable authority, and had in Shannon’s case been actually resisted by a judge of the general court. It was then to put an end to that question, and to secure to those courts that general power of acquittal which almost every body thought they did possess, that this third section of the aet of 1HQ4, was inserted. :
*248 Another argument was pressed upon the court in. a late stage of the cause, drawn from the 12th section of the penitentiary statute. It will not however be contended that if the legislature pass a law upon a supposition that that is law which is not, this mistake will be equal to an enacting clause, and call a new law into existence—-if then the examining courts did not before possess this discriminating power, this section could not give it to them. But it is a mistake to suppose that when the legislature speak of a person’s being charged with a crime, a charge made by a grand jury or examining court is necessarily meant. The word charge is often used to designate a charge made upon oath before a justice of the peace, and it is so used in both of the acts of assembly respecting examining courts. The real intention of the legislature seems to have been, that when a man was sent forward for homicide, and the attorney to whom the law directs the depositions to be sent, should perceive that the evidence charged him with involuntary manslaughter only, he should be at liberty to proceed in the manner pointed out by that section.
Upon the whole the court is unanimously of opinion, that a court of examination hath not power to acquit a prisoner charged before it with murder, of the murder with which he stands so charged, and to remand the said prisoner to be tried in the superior court for manslaugh' *249 ter on account of the same homicide; and that if such court does make such a discrimination the prisoner is not thereby discharged from any part of the felonious homicide with which he stood charged, but may be indicted for murder before the superior court.
Judge White at the close of his opinion, added, that there was one point which the court had not yet undertaken to decide; viz. whether the commonwealth could mend its pleadings, that is, withdraw its demurrer and put in a new plea. This point was waved by the bar, and it was understood to be one which would fairly lay over for the court below.
The following order was then entered on the record, and directed to be certified to the Norfolk circuit court.
The superior court of Norfolk county having with the assent of the prisoner, Samuel Myers, adjourned to the general court the following questions of law, viz.
First: Whether a court of examination hath power to acquit a prisoner charged before them with murder, oí the murder with which he stands so charged, and to remand the said prisoner to be tried in the superior court for manslaughter on account of the same homicide.
*250 Secondly; Whether a prisoner acquitted by the ex-an 'ning c'»urt of murder and remanded to be tried before the superior court for manslaughter on account of the same homicide, but indicted in the said superior court for murder on account of the same homicide, is entitled to be bailed by such superior court after the discharge of the grand jury who found no other indictment against him.
And any and all the other questions of law arising upon the pleadings.
The court having maturely considered the said questions of law after the argument of the attorney general and counsel for the prisoner; are unanimously of opinion, and do decide:
First, That a court of examination have not power to acquit a person charged before them with murder, of the murder with which he stands so charged, and to remand him to be tried for manslaughter in the superior court on account of the same homicide.
Secondly, It is further the unanimous opinion of the court, that the examining court being legally incompetent to control the proceeding of the superior court upon the case of the prisoner remanded by the examining court to *251 the superior court for a felonious homicide, it was lawful to indict the prisoner for murder, notwithstanding the discrimination by the examining court as to the grade of of homicide, and being so indicted} the said prisoner was not entitled to be bailed on the ground of no indictment being found against him for the offence of manslaughter.
The prisoner having pleaded three pleas in bar, by the leave of the court, in substance as follows:
1st. That the prisoner was charged with the. murder of Richard Bowden, examined for the same before a court legally constituted and found not guilty of the murder, and that he ought not to be remanded to the superior court for trial therefor.
2d. That the prisoner was charged with the murder of Richard Bowden, examined for the same before a court legally constituted, and found not guilty of the said murder, and that he ought not to be remanded to the superior court therefor, but ought to be tried for the offence of manslaughter in the superior court of law to be held at Portsmouth, &c,
3d. That he was duly charged, examined and tried for the murder of Richard Bowden before a court legally constituted, and upon this trial and examination was duly *252 and legally acquitted of the said mdrderand felony with which he stood ¡charged, and was adjudged by the court not guilty thereof: To each of which pleas, the attorney for the commonwealth demurred generally and the prisoner filed a joinder thereto, and the matters of law arising thereupon having been duly considered; the court doth decide:
That the first plea affording matter in bar of the indictment, and well pleaded, the demurrer thereto ought to be overruled, and the plea held good.
That the second plea, stating a proceeding by the examining court which the court has decided, in answer to the first question, to be one exceeding the jurisdiction of that court, does not afford matter in bar of the indictment, and therefore as to that plea the demurrer ought to be held good and the plea overruled.
That the third plea affording matter in bar of the indictment and well pleaded, ought to be held good, and the demurrer thereto overruled—Which is ordered to be certified to the Superior Court of Norfolk county.
During the arguments of the above case the two cases »f Sorrell and Bailey were so often referred to, that it is *253 thought adviseable to annex them hereto. The former was reported ⅛ MS. by Saint George Tucker, Esq. whilst be was at the bar, and a copy of his report was shewn to the genera! court during Myers’s trial; the latter was also reported by hint: it will be observed that Bailey’s case was not quoted or relied upon as authority, it having been decided by a tribunal inferior to the general court.